423 S.E.2d 815 (1992)
108 N.C. App. 288
Alton BALLANCE, Ann Ehringhaus, Murray Fulcher, James B. Gaskill, Erik S. Mattsson and Charles Runyon, Petitioners-Appellees,
v.
NORTH CAROLINA COASTAL RESOURCES COMMISSION, Respondent-Appellant.
No. 9110SC983.
Court of Appeals of North Carolina.
December 15, 1992.
*816 Southern Environment Law Center, by Lark Hayes and Derb S. Carter, Jr., Chapel Hill, and Theodore O. Fillette, III, Charlotte, for petitioners-appellees.
Atty. Gen. Lacy H. Thornburg by Special Deputy Atty. Gen. Daniel C. Oakley and Asst. Atty. Gen. Robin W. Smith, Raleigh, for respondent-appellant.
WELLS, Judge.
The Coastal Area Management Act (CAMA), N.C.Gen.Stat. § 113A-100, et seq., was enacted to provide for the protection and continued productivity of the coastal resources, to manage competing uses of those resources, and to protect public trust rights in the lands and waters of the coastal area. CAMA directs and empowers the Coastal Resource Commission (CRC) to enforce the Act's provisions. Under the authority vested in it by CAMA, the CRC has designated all public trust waters as subject to its management under coastal management development standards. Any development in public trust waters requires a CAMA permit. N.C.Gen.Stat. § 113A-118.
On 28 August 1990, CRC (respondent) issued a CAMA Major Development Permit (No. 127-90) to Paley-Midgette Partnership. In public trust waters (the Pamlico Sound) off Ocracoke Island, the CAMA permit authorized the extension of an existing pier and the construction of docking facilities on the pier.
On 16 September 1990, pursuant to N.C.Gen.Stat. § 113A-121.1(b), petitioners requested CRC to grant them an administrative contested case hearing concerning petitioners' opposition to CRC's issuance of the CAMA permit. On 22 October 1990, CRC's Chairman, James E. Harrington, denied the petitioners' request for a contested case hearing. On 3 December 1990, petitioners petitioned the Wake County Superior Court to review the CRC's decision to grant the permit and to review respondent's denial of petitioners' request for an administrative contested hearing.
Following the 18 April 1991 hearing on the merits, Judge Jack A. Thompson found that petitioners were entitled to a contested case hearing, that petitioners had exhausted their administrative remedies, and that petitioners were entitled to the full scope of judicial review provided by N.C.Gen.Stat. § 150B-43. Judge Thompson's judgment included an order rescinding the CAMA Permit No. 127-90. North Carolina Coastal Resources Commission appealed.
The sole issue in this appeal is whether the trial court properly rescinded CAMA Permit No. 127-90. While the respondent concedes that the court could properly reverse CRC's decision denying petitioners' contested case hearing request, respondent contends that the trial court erred when it went on to rescind the permit. Respondent presents three arguments in opposition to the trial court's recision of the CAMA permit.
Respondent's first and third arguments can be summed up as follows: Respondent asserts that the trial court erred when it found that the petitioners had exhausted their administrative remedies. Respondent also argues that the trial court's judicial review of CRC's administrative decision improperly contains additional findings of fact which should have been reserved for the administrative agency to address. In conclusion, respondent contends that the trial court lacked subject matter jurisdiction and asserts that the trial court's recision of the CAMA permit amounted to a ruling on a substantive factual issue before that issue had been considered by the administrative agency. Respondent's contentions are without merit.
*817 First, respondent's contention that CRC has not been allowed an opportunity to consider the issues at bar is hollow. For all practical purposes, the CRC issued a final decision on the merits of this case when it, through its agent Chairman Harrington, denied petitioners request for a contested case hearing, stating that "[p]etitioners have failed to put forward a prima facie case that the permit decision violated the cited standards and therefore have failed to demonstrate a reasonable likelihood of success on the merits...." (Order of the Chairman of the Coastal Resources Commission denying petitioners' request for a contested case hearing.)
It is important to note that by granting the chairman the authority to dispose of certain petitions for contested review without the need of a hearing before the full commission, the respondent has delegated to its agent the authority to make a final determination. This delegation of authority within the agency does not act so as to give the agency two shots at making a final determination, (once by the chairman and once after remand of his denial for a contested case hearing), but rather acts so as to make the delegee's final determination binding upon the agency.
The provisions of N.C.Gen.Stat. § 113A-121.1 make it abundantly clear that the agency's denial of petitioners' request for a contested case hearing is a final agency decision subject to judicial review.
§ 113A-121.1 Administrative review of permit decisions.
(a) An applicant for a minor or major development permit who is dissatisfied with the decision on his application may file a petition for a contested case hearing under G.S. 150B-23 within 20 days after the decision is made. When a local official makes a decision to grant or deny a minor development permit and the Secretary is dissatisfied with the decision, the Secretary may file a petition for a contested case within 20 days after the decision is made.
(b) A person other than a permit applicant or the Secretary who is dissatisfied with a decision to deny or grant a minor or major development permit may file a petition for a contested case hearing only if the Commission determines that a hearing is appropriate. A request for a determination of the appropriateness of a contested case hearing shall be made in writing and received by the Commission within 20 days after the disputed permit decision is made. A determination of the appropriateness of a contested case shall be made within 15 days after a request for a determination is received and shall be based on whether the person seeking to commence a contested case:
(1) Has alleged that the decision is contrary to a statute or rule;
(2) Is directly affected by the decision; and
(3) Has a substantial likelihood of prevailing in a contested case hearing.
If the Commission determines a contested case hearing is appropriate, the petition for a contested case shall be filed within 20 days after the Commission makes its determination. A determination that a person may not commence a contested case is a final agency decision and is subject to judicial review under Article 4 of Chapter 150B of the General Statutes. (Emphasis added.)
It is therefore clear that the Court below had subject matter jurisdiction in this case.
The question of whether the trial court erred in making findings of fact is simply not a "subject matter" issue. That question is properly resolved under the judicial review standard set out in N.C.Gen. Stat. § 150B-51 which states that:
the court reviewing a final decision may affirm the decision of the agency or remand the case for further proceedings. It may also reverse or modify the agency's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions or decisions are:
(1) In violation of constitutional provisions;
(2) In excess of the statutory authority of jurisdiction of the agency;
(3) Made upon unlawful procedure;

*818 (4) Affected by other error of law;
(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
(6) Arbitrary or capricious.
Pursuant to its legislative mandate, the CRC has adopted and promulgated the following rules pertinent to the resolution of this case, which the trial court correctly concluded were violated by the issuing of the permit in this case.
.0207 PUBLIC TRUST AREAS
. . . . .
(b) Significance. The public has rights in these areas, including navigation and recreation. In addition, these areas support valuable commercial and sports fisheries, have aesthetic value, and are important resources for economic development.
(c) Management Objective. To protect public rights for navigation and recreation and to preserve and manage the public trust areas so as to safeguard and perpetuate their biological, economic, and aesthetic value.
(d) Use Standards. Acceptable uses shall be those consistent with the management objectives in (c) of this Rule. In the absence of overriding public benefit, any use which significantly interferes with the public right of navigation or other public trust rights which the public may be found to have in these areas shall not be allowed.... [T]he building of piers, wharfs, or marinas are examples of uses that may be acceptable within public trust areas, provided that such uses will not be detrimental to the public trust rights and the biological and physical functions of the estuary.
15A N.C.A.C. 7H .0207.0208 USE STANDARDS
(a) General Use Standards
. . . . .
(2) Before being granted a permit by the CRC ... there shall be a finding that the applicant has complied with the following standards:
(A) The location, design, and need for development as well as the construction activities involved must be consistent with the stated management objective....
(3) When the proposed development is in conflict with the general or specific use standards set forth in this Rule, the CRC may approve the development if the applicant can demonstrate that the activity associated with the proposed project will have public benefits as identified in the findings and goals of the Coastal Area Management Act, that the public benefits clearly outweigh the long range adverse effects of the project....
15A N.C.A.C. 7H .0208
It is clear upon our review that the trial court's conclusions were based upon the entire record as submitted.
In summary, the trial court correctly concluded, inter alia, that the granting of the permit was made upon unlawful procedure, was affected by other errors of law, was not supported by substantial evidence in view of the entire record as submitted, and was arbitrary and capricious.
As for the respondent's contention that the trial court improperly made findings of fact, respondent does not contend that the trial court's findings were not correct, only that it was not properly the role of the trial court to make any findings of fact. While the cases are somewhat conflicting on this narrow question, we find that the trial court's findings in this case accurately reflect the factual contents of the entire record of this case. Therefore, if it was error for the trial court to make such findings, it was certainly harmless error. The "whole record" makes it clear that the trial court considered uncontradicted reports from the United States Fish and Wildlife Service of the Department of the Interior, the National Marine Fisheries Service of the U.S. Department of Commerce, the U.S. Army Corps of Engineers, the North Carolina Wildlife Resources Commission, the Division of Marine Fisheries of the North Carolina Department of the Environment, Health and Natural Resources, Ocracoke residents themselves, *819 and the Field Services Section of the respondent's own agency, all of which asserted opposition to the extension of the pier in question and supported denial of the permit application. Citing a variety of ecological concerns, potential environmental damage, and interference with public access to and use of the affected waters, the uncontradicted reports support the trial court's conclusion that, as a matter of law, the CRC erred when it issued permit No. 127-90. On the other hand, the whole record shows that the only basis for issuing the permit was that it would make the public waters adjacent to the permitee's condominium project more convenient for the permitee's use. Therefore, we affirm the trial court's rescission of the CAMA permit.
In its second argument, respondent contends that the trial court's judgment is faulty because the trial court did not have personal jurisdiction over the permit applicant. This contention is also without merit. The trial court's order is addressed to the North Carolina Coastal Resources Commission and instructs the Commission to carry out acts within its authority.
For the reasons stated, the trial court's judgment is
Affirmed.
ARNOLD and LEWIS, JJ., concur.